Case 18-14310-amc Doc 213 Filed 06/14/21 Entered 07/06/21 Page 1 of 13 Desc Main
Case 2:21-cv-00602-KSM Document 17 Filed 06/14/21 Page 1 of 13
Document    Page 1 of 13

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE LINDA OSINUPEBI**, | **CIVIL ACTION**<br><br>**NO. 21-602-KSM** |

## MEMORANDUM

**MARSTON, J.**                                                                                  June 14, 2021

This bankruptcy appeal involves an unusual set of circumstances. At the outset, the bankruptcy court dismissed the underlying bankruptcy petition because the debtor, Linda Osinupebi, failed to file the proper documents. The only exception to that dismissal was an open motion filed by the Bank of New York Mellon ("BNYM"), which asked the court to find that a sheriff's sale of Linda's home was exempt from the bankruptcy's automatic stay. Resolving that motion has required years of litigation and numerous orders from the bankruptcy court, the most recent of which is the subject of this appeal. In addition to having an unusual procedural posture, this case is further complicated by the unfortunate circumstance that Linda died earlier this year, and this appeal was filed by her daughter, Oluwaseyi Osinupebi.

Interested Parties BNYM and Nasr Properties I, LLC argue that Oluwaseyi lacks standing to challenge the bankruptcy court's order validating the sheriff's sale. Oluwaseyi, who was an active participant in the bankruptcy court proceedings, argues that she is pecuniarily affected by the order, and therefore, has appellate standing. For the reasons discussed below, we agree with BNYM and Nasr Properties and quash the appeal.

**I.    Facts and Procedural History**

   **A.    The Bankruptcy Case:  Phase I**

In February 2007, Linda Osinupebi executed a note and mortgage on 711 Yeadon Ave,

Yeadon, Pennsylvania.  (Bankr. Doc. No. 10-1, Ex. A, Note, Mortgage, and Assignment of Mortgage.)  On April 8, 2015, the mortgagor, BNYM, filed a foreclosure action in state court, and declaratory judgment was entered against Linda and in favor of BNYM later that year.  *See Bank of N.Y. Mellon v. Osinupebi*, No. 2015-003131, Opinion at p. 2 (Pa. Ct. Comm. Pl. July 15, 2019); *see also* Bankr. Doc. No. 49-2 at p. 3.  After multiple motions to postpone a sheriff's sale of the property and one petition to open the foreclosure, the home was ultimately sold to BNYM at a sheriff's sale on June 15, 2018.  *See Bank of N.Y. Mellon*, No. 2015-003131, Opinion at p. 2 (July 15, 2019); *see also* Bankr. Doc. No. 49-2 at p. 3.

Also on June 15, 2018, at 12:23 p.m., Linda filed a pro se Chapter 7 bankruptcy petition, and the case was assigned to Bankruptcy Judge Jean K. FitzSimon.  (Bankr. Doc. No. 1.)  When Linda failed to submit the necessary documents with the petition, the bankruptcy court ordered her to file the required documents by June 28, 2018, or the case would be dismissed.  (Bankr. Doc. No. 4.)  Meanwhile, on June 27, 2018, BNYM filed a motion for relief from the automatic stay and request for *in rem* relief as to the Yeadon Avenue home.  (*See* Bankr. Doc. No. 10.)  With the motion, BNYM included an email from the Delaware County Sheriff's Office which stated that the overall sheriff's sale ended at 12:45 p.m.  (*Id.* at ¶ 9.)  Erroneously believing that the bankruptcy proceeding was filed at 12:55 p.m.,[1] BNYM argued that the sale occurred before the bankruptcy filing and therefore, the Yeadon property was not part of the bankruptcy estate or subject to the automatic stay.  (*Id.* at ¶¶ 10–12.)  BNYM asked for relief from the stay to allow delivery of the sheriff's deed.  (*Id.* at p. 6.)

On June 28, 2018, while BNYM's motion was pending, the bankruptcy court dismissed Linda's bankruptcy petition for failure to file the necessary documents.  (Bankr. Doc. No. 12.)

---

[1] The bankruptcy petition was filed at 12:23 p.m., but not entered on the docket until 12:55 p.m.

2

However, the case remained open for the limited purpose of the court ruling on the pending motion for relief from the stay. (*Id.*)

In August 2018, the court granted BNYM's motion and vacated the automatic stay so that BNYM could "pursue its state court rights" with respect to the Yeadon property. (Bankr. Doc. Nos. 24 & 25.) Linda, through her daughter and power-of-attorney, Oluwaseyi, moved for reconsideration of that order. (Bankr. Doc. Nos. 28 & 36 (framed as "motion to reverse").) Among other things, Linda argued that BNYM's motion wrongly alleged that the bankruptcy petition was filed at 12:55 p.m. Because the petition was actually filed at 12:23 p.m., there was no proof that the sale, which ended at 12:45 p.m., occurred before the petition was filed, and therefore, the sheriff's sale may have violated the automatic stay. (Bankr. Doc. No. 36).

On December 12, 2018, the bankruptcy court held a hearing on the motion to reconsider and ultimately granted the motion. (Bankr. Doc. No. 41.) The court vacated the August 2018 order lifting the automatic stay as to the Yeadon property, along with its amendments — Bankr. Doc. Nos. 26 and 29. (*Id.*) But, importantly, the order did not include any findings of fact, explicitly rule on the validity of the sheriff's sale, or vacate the sale.

With that motion decided and the remainder of the bankruptcy case dismissed, nothing else happened in the bankruptcy action for over a year.

### B.     The State Court Actions

#### 1.     BNYM's Foreclosure Action

Meanwhile, the deed transferring the property to BNYM was recorded on July 19, 2018. *See Bank of N.Y. Mellon*, No. 2015-003131, Opinion at p. 3 (July 15, 2019); *see also* Bankr. Doc. No. 49-2 at p. 4. Linda moved in the state foreclosure action to strike the recorded deed, and BNYM petitioned the state court for confirmation of the sheriff's sale and the sheriff's deed. *See*

3

*Bank of N.Y. Mellon*, No. 2015-003131, Opinion at p. 1 (July 15, 2019); *see also* Bankr. Doc. No. 49-2 at p. 2. The state court denied Linda's motion, and granted BNYM's petition on May 23, 2019 holding: "The sheriff's sale of the real property commonly known as 711 Yeadon Ave. . . . was not impacted or impaired by Defendant's bankruptcy" and the "sheriff's sale and sheriff's deed recorded July 19, 2019 are hereby confirmed." *See Bank of N.Y. Mellon*, No. 2015-003131, Order (May 23, 2019); *see also* Bankr. Doc. No. 49 at p. 4. Specifically, the Court found that although the overall sheriff's sale for the day ended at 12:45 p.m., the "hammer" fell as to the Yeadon property at 11:55 a.m. *See Bank of N.Y. Mellon*, No. 2015-003131, Opinion at p. 8 (July 15, 2019); Bankr. Doc. No. 49-2 at p. 9. Because the sheriff's sale was final before the bankruptcy petition was filed, Linda "was unable to claim protection of an automatic stay to prevent the sale." *See Bank of N.Y. Mellon*, No. 2015-003131, Opinion at p. 8 (July 15, 2019); Bankr. Doc. No. 49-2 at p. 9.

Linda appealed the trial court's ruling, and on November 14, 2019, the appellate court quashed her appeal.

      2.    ***Nasr Properties' Eviction Action***

After the deed was recorded in July 2018, BNYM sold the property to Nasr Properties. And in February 2019, Nasr Properties filed an eviction action in the Pennsylvania Court of Common Pleas. *See Nasr Properties, I, LLC v. John Doe No. 1*, No. 2019-001574, Complaint (Pa. Ct. Comm. Pl. Feb. 27, 2019). On January 7, 2020, the Pennsylvania Court of Common Pleas entered judgment in favor of Nasr Properties and granted the company possession of the home. *Id.* at Order (Jan. 7, 2020); *see also* Bankr. Doc. No. 44-1 at p. 5.

    C.    ***The Bankruptcy Case: Phase II***

Having lost in state court, Linda returned to bankruptcy court. On January 10, 2020,

4

Linda filed an emergency motion to reopen the bankruptcy action, asking the bankruptcy court to "reverse the recent judgment entered" by the state court.  (Bankr. Doc. No. 44.)  Judge FitzSimon scheduled a hearing, and when Linda did not attend, the court denied her motion for failure to appear at the hearing and because it was unclear what relief Linda sought in bankruptcy.  (Bankr. Doc. No. 51.)  Linda requested a rehearing, which the court granted, but the court noted in the order rescheduling the hearing that it was "unclear whether the debtor herself" or her daughter was filing documents with the court.  (Bankr. Doc. Nos. 52 & 54.)  Therefore, the debtor was ordered to appear at the hearing with photo identification.  (Bankr. Doc. No. 54.)

      The new hearing proceeded on March 11, 2020, after which Judge FitzSimon entered an order that lies at the heart of the current dispute.  (*See* Bankr. Doc. No. 60.)  The order accomplished three things.  First, it noted that Linda and Oluwaseyi had spread confusion in the state court and the bankruptcy court as to the identity of the debtor and the owner of the Yeadon home.  (*Id.* at pp. 2–3.)  Second, the order denied Linda's emergency motion to reopen the bankruptcy proceeding, finding that Linda was dilatory in bringing it and could "pursue any available remedies in state court."  (*Id.* at p. 6.)  Third, the order held that the "sheriff's sale . . . which occurred on June 15, 2018 . . . is void and of no legal effect."  (*Id.*)  In support of this holding, the court suggested that the sheriff's sale should have been voided years ago as part of the August 2018 order, because the "evidence presented at the [2018] hearing demonstrated the possibility that the Sheriff's Sale of the Debtor's home on June 15, 2018 occurred shortly after her bankruptcy filing and might, therefore, be void as being in violation of the automatic stay." (*Id.* at p. 3.)  Judge FitzSimon also found that there was "no risk of [her holding] violating the *Rooker-Feldman* doctrine because the injury complained of occurred in the bankruptcy proceeding and not the state court."  (*Id.* at p. 6 n.1.)

5

D.     *The Bankruptcy Case: Phase III*

Five months later, on August 20, 2020, the case was transferred from Judge FitzSimon to Bankruptcy Judge Ashley M. Chan and closed for statistical purposes. (*See* Bankr. Docket.) Nasr Properties, which was not a party to the initial bankruptcy proceedings in 2018, moved to reopen the case and for relief from the March 11 Order under Federal Rule of Civil Procedure 60(b). (Bankr. Doc. Nos. 62 (initial motion) & 64 (amended motion).) Nasr Properties argued that the court's conclusion voiding the sheriff's sale rested on a "substantial error of law or fact" in that it found the bankruptcy petition was filed before the home was sold at the sheriff's sale. (Bankr. Doc. No. 64 at p. 5.)

The court granted the request to reopen (Bankr. Doc. No. 68) and ordered Nasr to address whether the *Rooker-Feldman* doctrine was implicated (Bankr. Doc. No. 71). Nasr argued that the doctrine foreclosed any ruling by the federal court related to the timing of the sheriff's sale because the state court previously ruled that the gavel fell at approximately 11:55 a.m., and no later than noon. (Bankr. Doc. No. 71.) Linda argued that Judge FitzSimon's previous order found that the doctrine did not apply. (Bankr. Doc. No. 73.)

On December 2, 2020, Judge Chan granted Nasr's Rule 60(b) motion and voided the bankruptcy court's prior March 11, 2020 order voiding the sheriff's sale. (Bankr. Doc. No. 74.) The court held: "The said sheriff's sale of premises 711 Yeadon Avenue . . . having occurred prior to the filing of the instant bankruptcy, was, is, and remains valid." (*Id.*) On December 4, 2020, Linda moved for reconsideration. (Bankr. Doc. No. 77 (framed as a motion to vacate).) BNYM and Nasr Properties opposed the motion. (Bankr. Doc. Nos. 80 & 81.)

On January 4, 2021, while that motion was pending, Linda passed away. Despite the

pending motion, Oluwaseyi did not inform the bankruptcy court of her mother's death.[2]  And on January 8, 2021, she filed a motion for summary judgment in Linda's name.  (Bankr. Doc. No. 83.)  The substance of the motion for summary judgment was identical to the motion for reconsideration.  (*Id*.)  BNYM and Nasr opposed the motion for summary judgment, arguing that it was procedurally improper and wrongfully rehashed the arguments for reconsideration.  (Bankr. Doc. Nos. 84 & 85.)

The court held a hearing on the pending motions on January 27, 2021.  During the hearing, Judge Chan explained that she was denying the motion to reconsider because Linda failed to "allege any new facts," assert a "change in controlling law," or show "manifest injustice."  (Bankr. Doc. No. 97 at 17:4–12.)

> Essentially this just comes down to two times.  One time I think the debtor actually admits that the mother filed [the bankruptcy petition] at 12:23 p.m. on June 15th.  The other time is controlled by the State Court opinion which tells me that the sale of the house took place no later than noon on the same day; therefore, there's no basis to set aside the foreclosure sale and my order must be upheld.  There's also no reason to rule on the summary judgment motion, I'm going to deny that.  There's just no procedural reason for that document to be filed.  That's only filed in adversary proceedings and has really no relation to this main bankruptcy proceeding, so both those motions will be denied.

(*Id.* at 17:15–18:2.)  Later that day, Judge Chan entered an order denying the motion to reconsider for the reasons stated on the record during the hearing.  (Bankr. Doc. No. 89.)

### E.  *This Appeal*

On February 9, 2021, Oluwaseyi, using Linda's name, appealed Judge Chan's December 2020 and January 2021 orders to this Court.  A few days later, BNYM filed a suggestion of death, explaining that Linda died in early January, and therefore, could not have filed the appeal.

---

[2] Indeed, it appears Oluwaseyi purposefully hid her mother's death from the bankruptcy court.  During a telephone hearing on January 27, 2021, when Judge Chan asked whether Linda would be joining, Oluwaseyi responded, "She's unable to be on the phone today."  (Bankr. Doc. No. 97 at 5:21–24.)  At no point during that hearing did Oluwaseyi inform Judge Chan that her mother had died.

7

Case 18-14310-amc  Doc 213  Filed 06/14/21  Entered 06/14/21  Page 8 of 13  Desc Main
Case 2:21-cv-00602-SM  Document 17  Filed 07/06/21  Page 8 of 13
Document    Page 8 of 13

(Doc. No. 3.)  Nasr Properties then moved to quash the appeal, arguing that the real appellant was likely Linda's daughter, Oluwaseyi, who lacks appellate standing.  (Doc. No. 5.)  The Court ordered the true appellant to identify himself or herself and demonstrate that he or she has standing to bring the bankruptcy appeal.  (Doc. No. 8.)

Oluwaseyi, proceeding *pro se*, submitted a brief on April 29, 2021.  (Doc. No. 14.)  She identifies herself as "Next of Kin/Authorized Representative of Debtor's Estate" and "an heir and next of kin of the decedent Linda Osinupebi."  (*Id.* at p. 1.)  She also notes that during her mother's life, she "held Power of Attorney over all matters regarding the property address at 711 Yeadon Ave., Yeadon PA."  (*Id.*)  She argues that the bankruptcy court's "January 27, 2021 order[ ] pecuniarily affects me directly and adversely, due to that very order overturning a March 11, 2020 order that reinvested ownership to my mother Linda Osinupebi ('The Decedent')." (*Id.*)  Oluwaseyi also states that she "presently live[s] in the home on the property at 711 Yeadon Ave, Yeadon, PA; that has been my primary address over 30 years."  (*Id.*)

BNYM responds that the power of attorney is only valid for Linda's lifetime.  (Doc. No. 15 at p. 2.)  Because Oluwaseyi filed this appeal after Linda died, "she no longer had the powers given in said Power of Attorney."  (*Id.*)  In her reply brief, Oluwaseyi states that the power of attorney was only included to show her authority over "decedent's (Linda Osinupebi) property at 711 Yeadon Ave, Yeadon, Pa *antemortem*."  (Doc. No. 16 at p. 1 (emphasis added).)  She then argues that she has constitutional standing.  (*Id.*)

## II.     Discussion

"Standing to appeal an order of the Bankruptcy Court is limited to 'persons aggrieved' by the challenged decision."  *In re Fryer*, 235 F. App'x 951, 953 (3d Cir. 2007) (quoting *In re Dykes*, 10 F.3d 184, 187 (3d Cir. 1993)).  "Litigants are persons aggrieved if the order

8

diminishes their property, increases their burdens, or impairs their rights." *Id.* at 953–54 (quoting *In re Dykes*, 10 F.3d at 187). "Only those whose rights or interests are directly and adversely affected pecuniarily by an order of the bankruptcy court may bring an appeal." *Id.* at 954 (quoting *In re PWS Holding Corp.*, 228 F.3d 224, 249 (3d Cir. 2000)); *see also In re Dykes*, 10 F.3d at 187 ("A 'person aggrieved' has been defined as a person whose rights or interests are 'directly and adversely affected pecuniarily' by the order or decree of the bankruptcy court."); *In re Hawkins*, 513 B.R. 634, 638 (D. Del. 2013) ("A showing of potential harm incidental to the order is not enough.").

This standard is more restrictive than Article III's case or controversy requirement. *See In re Fryer*, 235 F. App'x at 954 ("[A]n appealing party must do more than simply show that the contested order gives rise to a 'case or controversy' under Article III."). The limited right to appeal arises out of an "understandable concern that if appellate standing is not limited, bankruptcy litigation will become mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order." *In re Dykes*, 10 F.3d at 187 (quotation marks omitted). "Whether an appellant is a person aggrieved is generally considered a question of fact for the district court." *Id.* (quotation marks omitted).

### A.      *Oluwaseyi's Standing on Behalf of Linda*

Oluwaseyi has not shown that she has standing to bring this appeal in Linda's name. Although Oluwaseyi held a power of attorney during Linda's life, that power expired when Linda died — and before Oluwaseyi filed this appeal. In addition, although Oluwaseyi states that she is an "authorized representative" and an "heir" to Linda's estate, she has not shown that she has been officially appointed as personal representative of the estate or even that the estate has been submitted to probate. *See In re Watson*, 8:20CV103, 2020 WL 3428969, at *4 (D. Neb.

9

June 22, 2020) (finding that daughter of deceased debtor lacked standing to challenge an order dismissing a bankruptcy action, which had operated to stay a tax foreclosure on the deceased debtor's home, because "the debtor is deceased, and no probate action has been filed in connection with her estate, nor has a personal representative been appointed"). And even if Oluwaseyi is the authorized representative of Linda's estate, she does not allege that she brings this appeal in a fiduciary capacity on behalf of the estate.

### B.   *Oluwaseyi's Standing in Her Own Right*

Because she is not representing the estate, Oluwaseyi must demonstrate that she has standing to bring this case in her individual capacity. *In re Marlow*, Nos. CC–10–1143 PaDKi, SV–09–23891–KT, 2011 WL 3299024, at *3 (Bankr. App. Panel 9th Cir. Feb. 1, 2011) ("Appellate standing cannot be asserted derivatively; an appellant must have standing in his own right."). In other words, Oluwaseyi must show that she is "directly and adversely affected pecuniarily" by the bankruptcy court's order reinstating the sheriff's sale. *In re Fryer*, 235 F. App'x at 953–54. Oluwaseyi asserts that she is pecuniarily affected by the court's order because she lives in the Yeadon home, and she is "an heir" to Linda's estate.

First, Oluwaseyi's presence at the Yeadon property, does not on its own demonstrate a "pecuniary" interest in the home. In other words, although Oluwaseyi lives in the home, she has not demonstrated that her property interests are diminished by the sale of the home, which belonged to her mother. *See In re Fryer*, 235 F. App'x at 953–54 ("Litigants are persons aggrieved if the order diminishes their property, increases their burdens, or impairs their rights." (quoting *In re Dykes*, 10 F.3d at 187)). In addition, any order finding the sheriff's sale valid would only indirectly affect her rights as a tenant because it will take a separate order of eviction to have her removed. *See In re Watson*, 8:20CV103, 2020 WL 3428969, at *3 (D. Neb. June 22,

10

2020) ("Potential pecuniary harm that is several steps removed from the challenged order is not sufficient to satisfy the aggrieved person requirement; for standing to exist there must be a direct pecuniary impact." (quotation marks omitted)); *In re Marlow*, Nos. CC–10–1143 PaDKi, SV–09–23891–KT, 2011 WL 3299024, at *3 ("The direct and adverse pecuniary effect required to confer appellate standing must be *immediate*.").

Second, even if Oluwaseyi is "an heir" to Linda's estate, that on its own does not suggest she has a pecuniary interest in the property. Even if we were to overturn the bankruptcy court's order, and find the sheriff's sale void as violating the automatic stay (ignoring the state court ruling to the contrary), the property would be part of Linda's estate and would not automatically transfer to Oluwaseyi. *See In re Hawkins*, 513 B.R. at 638 (finding that appellants were not persons aggrieved by an order declining to reopen bankruptcy because they failed to show they "had a pecuniary interest in the proceeds from the sale of the property at issue"); *cf. Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 742 (3d Cir. 1995) (finding that the debtor's insurance company lacked standing to contest a bankruptcy order reinstating creditors' claims because the insurer was "at least two steps removed from any possible diminution of its property" — "an insurer is not liable for a claim unless the insured is liable first . . . and an insurer has no derivative liability unless and until it is determined that the policy covers the acts for which the insured has been found liable").

In addition, the property remains subject to a valid state foreclosure judgment, and Oluwaseyi has not alleged that Linda's estate can avoid that judgment. *See In re Miller*, No. 12-8004, 2012 WL 6719421, at *6 (Bankr. App. Panel 6th Cir. Dec. 27, 2012) (finding that the daughter of the deceased debtor lacked standing because "sale of the Properties will have no pecuniary impact on whatever inheritance [the debtor's daughter] may receive," where the debtor

11

would not himself have recovered anything from the sale because the liens far outvalued the property's worth). Finally, even if the property was not subject to foreclosure, being "an heir" does not mean that Oluwaseyi will inherit the home. For example, Oluwaseyi has not explained whether Linda's estate will be divested pursuant to a will or is intestate, nor has she identified whether there are other heirs who may have a superior claim to the home.[3] *Cf. In re Graves*, 156 B.R. 949 (E.D. Pa. 1993) ("[T]he Debtor's interest in the Home was clearly one that would be affected by the sheriff's sale because whatever interest she gained from her inheritance would terminate upon a subsequent purchase of the Home.").

Under the facts of this case, we find that Oluwaseyi lacks appellate standing. *See In re Watson*, 2020 WL 3428969, at *4 (finding that daughter of deceased debtor lacked standing to challenge an order dismissing a bankruptcy action because "the debtor is deceased, and no probate action has been filed in connection with her estate, nor has a personal representative been appointed," and the daughter had not shown she was a person aggrieved by the order); *cf. In re Pecan Groves of Ariz.*, 951 F.2d 242, 245–46 (9th Cir. 1991) ("[P]roperty owners," other than the debtor, "have no standing to challenge the sale by the bankrupt's trustee of the debtor's interest in the property in violation of [an automatic] stay.").[4]

---

[3] For example, the Durable Power of Attorney for Financial Management, through which Linda granted Oluwaseyi power of attorney, shows that Linda has at least one other daughter, Atinuke Moss, who previously served as her mother's power of attorney. (*See* Doc. No. 14 at p. 5.) In addition, the Power of Attorney is notarized by an Abayow B. Osinupebi, who appears to be another of Linda and Oluwaseyi's relatives. (*Id.* at p. 10.)

[4] Even if the Court were to find that Oluwaseyi has standing, we have serious doubts that she would ultimately succeed in having the bankruptcy court's opinion overturned, given the state court judgment validating the sheriff's sale. Whether in error or not, Judge FitzSimon's August 2018 order did *not* void the sheriff's sale or find that the sale occurred after the bankruptcy appeal was filed. It merely voided the bankruptcy court's previous orders lifting the automatic stay as to the Yeadon property. Because the bankruptcy court failed to rule on the validity of the sheriff's sale, its validity remained an open question when the state court unequivocally ruled in November 2019 that the sale occurred before the bankruptcy petition was filed and therefore, was not affected by the automatic stay. Judge FitzSimon's March 2020 order, which held that the sheriff's sale was invalid, was thus, in direct conflict

## IV.  Conclusion

In sum, Oluwaseyi does not have standing to pursue this appeal because she has not shown that she is an authorized representative of Linda's estate pursuing this appeal on behalf of the estate, nor has she demonstrated that she will suffer an immediate pecuniary interest that is directly affected by the bankruptcy court's December 2020 and January 2021 orders.  Therefore, the Court grants Nasr Properties I, LLC's motion and quashes this appeal.

An appropriate Order follows.

---

with the state court's earlier, binding ruling.  *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (explaining that the *Rooker-Feldman* doctrine "strips federal courts of jurisdiction over controversies that are essentially appeals from state-court judgments" (quotation marks omitted)); *see also Trustees of Gen. Assembly of Lord Jesus Christ of Apostolic Faith, Inc. v. Patterson*, CIVIL ACTION No. 21-634-KSM, 2021 WL 1061215, at *20 (E.D. Pa. March 19, 2021) (explaining that issue preclusion "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination" and that "[s]tate court decisions are given the same preclusive effect in federal court they would be given in the courts of the rendering state" (quotation marks omitted)).  Given this timeline, Judge Chan's December 2020 and January 2021 orders appear to have correctly granted relief and voided the March 2020 order under Rule 60(b)(6) as based on a substantial error of fact or law.

13